ROBERT A. FRANKLIN (091653)
DORIS A. KAELIN (162069)
THOMAS T. HWANG (218678)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: rfranklin@murraylaw.com
Email: dkaelin@murraylaw.com
Email: thwang@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

In re:

**IMPEVA LABS, INC.,**

Debtor.

2570 West El Camino Real, Suite 100
Mountain View, California 94040

Employer Tax I.D. No.: 20-2084435

Case No. 10-53056-ASW-11

Chapter 11

Date: April 1, 2010 *[subject to entry of order shortening time]*
Time: 10:00 a.m.
Place: United States Bankruptcy Court
280 S. First St., Room 3020
San Jose, CA 95113
Judge: Honorable Arthur S. Weissbrodt

## NOTICE OF HEARINGS ON FIRST DAY MOTIONS

**TO:** **(I) THE OFFICE OF THE UNITED STATES TRUSTEE; AND (II) THE CREDITORS HOLDING THE 20 LARGEST CLAIMS IN THE CASE; AND (III) OTHER PARTIES IN INTEREST**

**NOTICE IS HEREBY GIVEN** that on March 26, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code[1] and is presently operating its business as a debtor in possession under 11 U.S.C. §§ 1107 and 1108

---

[1] All statutory references are to Title 11 of the United States Code ("Code" or "Bankruptcy Code") as amended by Congress and enacted by the President on April 20, 2005, unless otherwise specified herein.

**NOTICE IS HEREBY FURTHER GIVEN** that subject to the Court's entry of an ORDER SPECIALLY SETTING HEARING DATES AND SHORTENING TIME FOR NOTICE, a hearing will be held on **April 1, 2010, at 10:00 a.m.**, or as soon thereafter as the matter may be heard, and will take place at the United States Bankruptcy Court, 280 South First Street, Room 3020, San Jose, California 95113, before the Honorable Arthur S. Weissbrodt, United States Bankruptcy Judge, to consider the following motions (collectively the "First Day Motions") filed by Impeva Labs, Inc., the debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor"):

> MOTION FOR INTERIM AND FINAL ORDERS APPROVING AGREEMENT TO PROVIDE POST-PETITION FINANCING, FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE UNDER SECTION 364 AND FOR MODIFICATION OF AUTOMATIC STAY (the "DIP Financing Motion");
>
> MOTION FOR ORDER AUTHORIZING THE DEBTOR TO HONOR PREPETITION WAGES AND EMPLOYEE OBLIGATIONS (the "Employee Obligations Motion");
>
> MOTION FOR ORDER (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED OF PAYMENT; AND (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE OF PAYMENT (the "Utilities Motion"); and
>
> MOTION FOR ORDER APPROVING OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTOR (the "Sale Procedures Motion").

The First Day Motions are based on this Notice, the DECLARATION OF RANDALL L. SHEPARD IN SUPPORT OF FIRST DAY MOTIONS (the "Omnibus Declaration"), the First Day Motions themselves, the pleadings and papers on file herein and upon such oral and documentary evidence as may be presented at the hearing on the First Day Motions.

Parties should review the applicable First Day Motion and the Omnibus Declaration for all details on the First Day Motions. In addition, this Notice provides a summary of the relief requested by each of the First Day Motions as follows:

1. The Debtor has agreed to the terms of a definitive Asset Purchase Agreement (the "Purchase Agreement") with ARINC Engineering Services, LLC, a Delaware limited liability company ("ARINC") for the sale ("Sale") of substantially all of the assets of the Debtor (the "Purchased Assets"), together with the assumption and assignment of certain specified executory contracts and unexpired leases of the Debtor. The Purchase Agreement provides for a purchase price of $2,000,000, less any amounts loaned and any unpaid accrued interest thereon pursuant to the

Debtor in Possession financing which is the subject of the DIP Financing Motion, and less the deposit paid by ARINC in connection with the Purchase Agreement, which shall be paid at the closing by wire transfer or the delivery of other immediately available funds.  In addition, ARINC will assume performance of certain Assumed Contracts and cure Debtor defaults by assuming specified liabilities designated by ARINC not to exceed $1,000,000, which the Debtor presently estimates will be approximately $590,000 (the total consideration set forth herein is hereafter referred to as the "Purchase Price").  The Purchase Agreement provides for a 60-day period during which the Debtor, subject to the other terms and conditions therein, shall indemnify ARINC against, and hold ARINC harmless from, all loss arising out of the failure of any representation or warranty of the Debtor, in an amount up to the amount of the Expense Reimbursement (which is capped at $300,000), as the exclusive remedy for such claims in the absence of fraud.

In its Chapter 11 case, the Debtor contemplates that it will continue its operations so as to maintain its going concern value and maximize the value of the Purchased Assets for the benefit of creditors.  Continued operations will be funded by a debtor in possession loan by ARINC which is the subject to the DIP Financing Motion.

The Debtor has minimal cash as of the Petition Date and its regular payroll is due on March 31, 2010.  To maintain the ongoing concern value of the Debtor, the Debtor will need an infusion of cash to pay its suppliers and employees and other operating expenses.  The ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtor.

If the proposed Sale is not consummated quickly, the Company may lose its employees whose services are essential to the Company and the preservation of the intellectual property. Retention of the Company's employees is critical to the Sale.  The Company has limited resources to maintain its operations, and to pay its suppliers, employees and expenses, and its going concern value may be completely lost if it is unable to maintain its operations and complete the Sale to ARINC or the highest bidder on an expedited basis.  Without the proposed DIP Financing and the Sale, the Purchased Assets would have minimal value and the Debtor believes no return would be

possible to general unsecured creditors. The proposed Sale to ARINC, on the other hand, is anticipated to provide a return to general unsecured creditors. The proposed Sale to ARINC is also subject to overbid pursuant to the procedures described in the Sale Procedures Motion. If qualified bids are received as provided by the Sale Procedures Motion, an auction will be held at a later date (which will be the subject of a separate notice), which could result in a greater Purchase Price.

The relief requested in the First Day Motions on shortened time, is necessary, essential and appropriate for the continued operations of the Debtor's business and the management and preservation of its property and will maximize the value of the Debtor's assets for the benefit of its creditors.

**The DIP Financing Motion**

The DIP Financing Motion requests entry of an order allowing the Debtor to incur post-petition secured financing pursuant to section 364 of the Bankruptcy Code. Specifically, the Debtor: (i) proposes to borrow up to $500,000 on an initial and interim basis and thereafter up to an aggregate of $1.2 million in a "debtor-in-possession" credit facility (the "DIP Facility") provided by ARINC to provide ongoing working capital to fund the Debtor's operations and Chapter 11 administrative expenses pending the Sale of the Purchased Assets pursuant to a motion to be filed approving such Sale under Bankruptcy Code § 363; (ii) seeks to provide security for such financing and all obligations arising thereunder by granting liens on all of the Debtor's assets Bankruptcy Code §§ 364(c)(2) and (3); and (iii) seeks to provide additional adequate protection through the grant of a superpriority claim pursuant to Bankruptcy Code § 364(c)(1).

**The Employee Obligations Motion**

The Employee Obligations Motion requests an order: (i) authorizing, but not requiring, the Debtor to pay accrued, prepetition employee wages and expense reimbursements; (ii) authorizing, but not requiring, the Debtor to honor vacation and Personal Time Off ("PTO") and to allow its employees to use prepetition accrued vacation and PTO in the ordinary course; and (iii) to the extent that certain banks and other financial institutions are required to receive, process, honor, and pay checks presented for payment by its employees, to comply with procedures and honor all funds transfer requests made by the Debtor relating thereto.

**The Utilities Motion**

The Utilities Motion requests an order: (i) prohibiting the Debtor's utilities from discontinuing services, (ii) determining that its utility companies are adequately assured of payment, and (iii) establishing procedures to determine requests for additional adequate assurance of payment pursuant to section 366(c)(3).

**The Sale Procedures Motion**

The Sale Procedures Motion requests the Court's approval of certain bid procedures that will govern the Sale, including the terms and conditions of any competing bids and the reimbursement of actual out-of-pocket costs and expenses incurred by ARINC up to a cap of $300,000, in the event that the assets are sold to another party for more than the purchase price contemplated in the Purchase Agreement.

**NOTICE IS HEREBY FURTHER GIVEN** that any person wishing to oppose any of the First Day Motions may present such opposition orally at the hearing.

Dated: March 30, 2010

**MURRAY & MURRAY**
A Professional Corporation

By: */s/ Robert A. Franklin*
     Robert A. Franklin
     Attorneys for Debtors