

```
1  ROBERT A. FRANKLIN (091653)
   DORIS A. KAELIN (162069)                IT IS SO ORDERED.
2  THOMAS T. HWANG (218678)                 Signed April 02, 2010
   MURRAY & MURRAY
3  A Professional Corporation
   19400 Stevens Creek Blvd., Suite 200
4  Cupertino, CA 95014-2548                          Arthur S. Weissbrodt
   Telephone:  (650) 852-9000; (408) 907-9200        U.S. Bankruptcy Judge
5  Facsimile:  (650) 852-9244          _____
   Email:  rfranklin@murraylaw.com
6  Email:  dkaelin@murraylaw.com
   Email:  thwang@murraylaw.com
7
8  Attorneys for Debtor
9
```

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| In re: | ) | |
|---|---|---|
| | ) | Case No. 10-53056-ASW-11 |
| **IMPEVA LABS, INC.,** | ) | |
| Debtor. | ) | Chapter 11 |
| 2570 West El Camino Real, Suite 100 | ) | Date: April 1, 2010 |
| Mountain View, California 94040 | ) | Time: 10:00 a.m. |
| | ) | Place: United States Bankruptcy Court |
| Employer Tax I.D. No.: 20-2084435 | ) | 280 S. First St., Room 3020 |
| | ) | San Jose, CA 95113 |
| | ) | Judge: Honorable Arthur S. Weissbrodt |

### ORDER APPROVING OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTOR

Upon the MOTION FOR ORDER APPROVING OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTOR (the "Motion") filed with the Court on March 31, 2010 by Impeva Labs Incorporated, the debtor and debtor in possession herein (the "Debtor") for entry of an order (the "Bidding Procedures Order") (a) approving certain bid procedures (the "Bidding Procedures") in connection with the proposed sale (the "Sale") by and between the Debtor (the "Seller") and ARINC Engineering Services, LLC and ARINC Acquisition, LLC (collectively,

"ARINC" or "Buyer") in connection with the sale of the Debtor's Purchased Assets[1] to Buyer, (b) approving certain bid procedures (the "Bidding Procedures") in connection with the Sale, (c) approving Buyer as the "stalking-horse" bidder, (d) approving the payment of the Expense Reimbursement to Buyer in accordance with the terms and conditions of the Purchase Agreement, and (e) scheduling a Sale Hearing to include an auction (the "Auction") in connection with the Sale; the Motion having come on for hearing before the Court on April 1, 2010 at 10:00 a.m. on shortened time; the Debtor having appeared by and through its counsel Murray & Murray, a Professional Corporation, and Robert A. Franklin and Doris A. Kaelin; Buyer having appeared by and through its counsel Arent Fox LLP and Katie A. Lane; other appearances were as noted in the record.

Having considered the arguments of counsel and the facts set forth in the pleadings of record in this case, and finding that appropriate and sufficient notice of the hearing on the Motion was given under the circumstances, the Court further finding that the bidding and other sale procedures described in the Motion are fair and reasonable under the circumstances of the Debtor's case and are in the best interest of the Debtor's creditors and estate, and good cause appearing therefore;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The Motion is granted as modified herein.

2. To the extent not withdrawn or rendered moot by the provisions contained herein, any objections to the entry of this Bidding Procedures Order are overruled.

**The Auction and Sale Hearing**

3. A hearing on the motion to approve the Sale of the Purchased Assets, together with the motion to approve the assumption and assignment of executory contracts and unexpired leases will be held at **10:00 a.m. on May 4, 2010** (the "Sale Hearing"). An Auction shall be held at the Sale Hearing if there are Qualified Bidders.

4. The below Bidding Procedures are hereby approved in their entirety, and shall apply to the proposed Sale in all respects. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

/ / /

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**Bidding Procedures**

5. Any person desiring to submit a competing bid for the Purchased Assets at the Auction shall submit such bid in accordance with the following Bidding Procedures:

    a. Parties wishing to conduct due diligence with the Debtor for purposes of participating at the Auction must first execute a confidentiality agreement in a form reasonably satisfactory to the Debtor and provide the Debtor with sufficient and adequate information to demonstrate, to the satisfaction of the Debtor, that such competing bidder (i) has the financial wherewithal and ability to consummate the Sale Transaction, including, but not limited to, adequate financing by commitment letter and financial guaranty, if appropriate, and (ii) can provide all non-debtor contracting parties to the Assumed Contracts with adequate assurance of future performance of all contracts and leases to be assigned. Only Buyer and any other party having satisfied the above conditions shall be permitted to conduct due diligence with the Debtor. The Debtor shall afford each Qualified Bidder due diligence access to the Debtor's assets and business, subject to competitive and other business concerns, which diligence may include access to the Debtor's data room, management presentations and site visits, and such other diligence which Qualified Bidders may request and to which the Debtor, in its discretion, may agree, provided, however, that the Debtor shall have no obligation to provide due diligence access to any Qualified Bidder after the Qualified Bid Deadline (as defined below), except as the Bankruptcy Court may otherwise order. The Debtor will coordinate efforts and provide all reasonable requests for additional information and due diligence access for Qualified Bidders. Debtor makes no representation or warranty to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the final Purchase Agreement.

    b. Parties wishing to bid at the Auction must first become qualified in accordance with the following procedures. A party shall become a "Qualified Bidder" by submitting the following (the "Competing Bid") to those parties set forth in paragraph "5 -c" hereof: (i) a good faith deposit in the amount of $50,000, in the form of a wire or a certified or cashier's check made payable to "Impeva Labs, Incorporated" (a "Bidder Deposit"); (ii) a written bid in an amount at least

$200,000[2] greater than the cash consideration set forth in the Purchase Agreement under a contract on terms at least as favorable and otherwise substantially identical to such agreement, (for example, any favorable waivers of conditions, representations or other terms that may constitute an improvement of the Purchase Agreement); (iii) a black-line copy of the Purchase Agreement marked to show any and all changes requested by such bidder to the Purchase Agreement; and (iv) sufficient and adequate written information to demonstrate, to the satisfaction of the Debtor, that such competing bidder (a) has the financial wherewithal and ability to consummate the Sale Transaction, including, but not limited to, evidence of adequate financing by commitment letter and financial guaranty, if appropriate, and (b) can provide all non-debtor contracting parties to the Assumed Contracts with adequate assurance of future performance as contemplated by Section 365 of the Bankruptcy Code, including proof of compliance with 22 CFR Part 122.4, which requires 60 days' advance notification to the Directorate of Defense Trade Controls of any sale or transfer to a foreign person of ownership or control of the registrant (collectively, the documents that comprise a Competing Bid are herein referred to as a "<u>Bid Package</u>"). No bid may contain a financing or due diligence contingency. No Competing Bid shall include any conditions to closing other than those set forth in the Agreement and shall provide for a closing on the same (or more favorable) terms as the Agreement.

        c.      Any bidder other than Buyer shall submit its completed Bid Package, as outlined in the preceding paragraph to (i) Impeva Labs, 2570 W. El Camino Real, Suite 100, Mountain View, California 94040; Fax (831) 303-3329, Attention: Randall Shepard; (ii) counsel to the Debtor, at Murray & Murray A Professional Corporation, 19400 Stevens Creek Boulevard, Suite 200, Cupertino, California 95014-2526, Fax: (650) 852-9244, Attention: Doris A. Kaelin, e-mail: dkaelin@murraylaw.com; and (iii) counsel to the Buyer, at Arent Fox LLP, 1050 Connecticut Avenue, N.W., Washington, DC 20036, Fax: (202) 857-6395, Attention: Judith B. Kassel and, Mary-Joanne Dowd and Katie A. Lane, e-mail: dowd.mary@arentfox.com; kassel.judith@arentfox.com; lane.katie@arentfox.com so <u>as to be received</u> by such parties on or before **April 28, 2010 at 4:00p.m. (Pacific Daylight Time)** (the "<u>Qualified Bid Deadline</u>"). Parties

---

[2] This initial bid amount is based on the minimum incremental bid amount of $50,000 plus the maximum amount of the Expense Reimbursement.

not submitting Bid Packages by the Qualified Bid Deadline <u>shall not be permitted to participate at the Auction</u>.

      d.     The sale of the Purchased Assets shall be on an "as is, where is" basis without representations or warranties of any kind or nature, except to the extent set forth in the Purchase Agreement or respective definitive purchase agreement(s) with the Winning Bidder. Except as may be set forth in the Purchase Agreement or respective definitive purchase agreement(s), any and all of the Debtor's assets shall be sold free and clear of any and all liens, claims, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code and other applicable law, with such liens, claims, restrictions, charges, and encumbrances to attach to the net proceeds of the sale in their order or priority under the Bankruptcy Code and other applicable law.

      e.     All bids of Qualified Bidders must provide that the bid is irrevocable until two business days after the closing of the Sale Transaction. Each Qualified Bidder that participates in the Auction must further agree that its final and best bid at the conclusion of the Auction, if not deemed the Winning Bid (as defined below), shall serve, without modification, as a Back-up Bid (as defined below) or Alternate Back-up Bid (as defined below) as may be designated by the Debtor at the Sale Hearing, in the event the Winning Bidder fails to close as provided by the Bidding Procedures, this Order, and the Sale Order.

      f.     The Debtor shall determine which, if any, of the parties submitting Bid Packages before the Qualified Bid Deadline are Qualified Bidders and such parties shall be notified before **April 30, 2010 at 4:00p.m. (Pacific Daylight Time)**. Only Qualified Bidders may participate in the Auction.

      g.     The Debtor shall, after the Qualified Bid Deadline and prior to the Auction, evaluate the Qualified Bids received, and determine which of such bids reflects the highest and best offer for the Purchased Assets at that time. The Debtor shall announce such determination as the opening bid value (the "<u>Baseline Bid</u>") at the commencement of the Auction, and the Court shall conduct the Auction among the Qualified Bidders and Buyer to determine if any higher and better

offer may be obtained. Any further bids made at the Auction shall be increments of at least $50,000 greater than the Baseline Bid and any bid made thereafter.

  h. In the event the Debtor does not receive by the Bid Deadline at least one Qualified Bid for the Purchased Assets, other than the Purchase Agreement, the Debtor will seek approval of the sale of the Purchased Assets to the Buyer at the Sale Hearing.

  i. At the conclusion of the bidding, the Debtor shall (1) review the Qualified Bid(s) on the basis of, among other things, the following: (a) the amount of the Qualified Bid(s), (b) the form of the proposed transaction (i.e., any improvement in the terms set forth in the Purchase Agreement), (c) the number, type and nature of any changes to the Purchase Agreement, (d) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to the Debtor of such modifications or delay; (e) the likelihood of the bidder's ability to close a transaction and the timing thereof, and (f) the net value to the Debtor, taking into account the Buyer's right to the Expense Reimbursement, and such other aspects as determined by the Debtor in consultation with any Creditors' Committee; and (2) submit the highest and best bid (the "<u>Winning Bid</u>") for approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code.

  j. Prior to the Bankruptcy Court approving the successful bid, the bidder recommended by the Debtor as the Winning Bid shall supplement the Court's record with evidence establishing such bidder's provision of adequate assurance of future performance of executory contracts and unexpired leases to be assumed and assigned to such bidder.

  k. In the event either the Winning Bid is approved, but not consummated by the closing of the Sale as provided by the Purchase Agreement (or such later date as the Debtor and Winning Bidder shall mutually agree in writing), the Debtor will request that the next highest and best bid, and the next highest and best bid to that bid (and so on), be approved without the necessity of further order of the Bankruptcy Court, and that such bidder be required to consummate the transaction contemplated in its bid within seven (7) days of being declared the Winning Bidder.

  l. Any bidder that intends to request that the Bankruptcy Court make a finding under Bankruptcy Code Section 363(m) that such bidder's purchase of the Purchased Assets or the assignment to it of an executory contract or unexpired lease is in good faith, shall, in advance of the

Sale Hearing, file with the court and serve on the persons identified in Paragraph 5-c above, a written declaration of a competent witness demonstrating (1) the bidder's good faith and (2) the absence of fraud or collusion between the bidder and any other bidder, or between the bidder and the Debtor's or the estate's agents or employees. The declaration must also disclose any facts material to the good faith determination, including:

    i. The bidder's pre- and post-petition relationships with (a) any other bidder, (b) the Debtor or the Debtor's current or former officers, directors, agents or employees, and (c) any of the Debtor's major creditors or equity security holders;

    ii. The bidder's anticipated relationship after the sale with any of the Debtor's current or former officers, directors, agents or employees;

    iii. Whether any offers of employment or compensation have been or will be made to any of the Debtor's current or former officers, directors, agents or employees; and

    iv. Whether the bidder has paid or contemplates paying consideration in connection with the sale to any person other than the Debtor.

m. The Debtor reserves the right, in consultation with any Creditors' Committee, to select the next highest and best offer after the Winning Bid as a back-up bid (the "<u>Back-up Bid</u>" and each bidder is herein referred to as the "<u>Back-up Bidder</u>"), and one or more alternate back-up bids (each, the "<u>Alternate Back-up Bid</u>" and each bidder(s) is/are herein referred to as the "<u>Alternate Back-up Bidder</u>"), as applicable, for the Purchased Assets.

n. In the event that a Qualified Bidder is the Winning Bidder for the Purchased Assets, such bidder shall be bound by all the terms and conditions of the Agreement with appropriate modifications for (i) the identity of the successful bidder; (ii) the purchase price, as the same shall have been increased at the Auction; (iii) any modifications to the Agreement as may be agreed to by the Debtor and the Winning Bidder.

o. In the event that Buyer is not the Winning Bidder, then Buyer shall be entitled to the Expense Reimbursement (as defined below) as provided by this Order. Should overbidding

take place at the Auction, Buyer shall have the right, but not the obligation, to participate in the overbidding and to be approved as the Winning Bidder at the Sale Hearing based upon any such overbid, provided, however, that Buyer shall receive a credit against any additional incremental bid in an amount equal to the Expense Reimbursement and any amounts due under the Debtor-In-Possession Financing.

        p.      All Bidder Deposits of Qualified Bidders shall be retained in a segregated account by the Debtor (but any certified or cashier's checks will not be cashed) pending the Sale Hearing. The good faith deposit of the Winning Bidder (i.e., the deposit of Buyer or the Bidder Deposit, as applicable, collectively referred to herein as the "<u>Good Faith Deposit</u>") shall be applied to the purchase price of such transaction at the closing. The deposit of the Winning Bidder, other than that of the Buyer, whose good faith is further evidenced by the provision of the Debtor-in-Possession Financing, shall also, within five (5) business days following the Sale Hearing, be increased to an amount sufficient to reflect ten percent (10%) of the cash portion of the Purchase Price of such winning bid. The Good Faith Deposit of each of the Back-up Bidder and Alternate Back-up Bidder shall be held until the earlier of five (5) days after the closing of the transactions contemplated by the Winning Bid, or, if applicable, the Back-up Bid or Alternate Back-up Bid, and thereafter returned to the Back-up Bidder and/or Alternate Back-up Bidder. Good Faith Deposits of any bidder not selected as a Back-up Bid or Alternate Back-up Bid by the Debtor shall be held until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective bidders. If a Winning Bidder, Back-up Bidder, or Alternate Back-up Bidder, as applicable, fails to consummate an approved sale because of a breach or failure to perform on the part of such bidder, the Debtor (a) shall retain the Good Faith Deposit of such bidder as liquidated damages resulting from the breach or failure to perform by such bidder; and (b) be authorized but not required to consummate the Back-up Bid, or Alternate Back-up Bid, as applicable, without further notice or order of the Bankruptcy Court.

        q.      All bids for the purchase of the Purchased Assets shall be subject to approval of the Court.

r.   Only bids by Qualified Bidders and Buyer shall be considered at the Auction. The Debtor, in its discretion, may reject any Bid Package prior to the Auction or any subsequent bid at the Auction as not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, or contrary to the best interests of the Debtor and other parties in interest.

s.   The Debtor, in its discretion, may adopt rules for the Auction at the Auction that, in its reasonable judgment, will better promote the goals of the Auction and that are not inconsistent with any of the material provisions of the Bidding Procedures Order or the Agreement.

**Expense Reimbursement**

6.   Buyer is approved as the Stalking Horse bidder.

7.   The Expense Reimbursement is hereby approved and the Debtor shall be, and hereby is, authorized and directed to pay Buyer (as an administrative expense claim) the Expense Reimbursement in accordance with the terms of the Agreement and this Order.

8.   The Debtor is hereby authorized to reimburse its actual and reasonable costs and expenses, not to exceed $150,000, including fees to professionals, incurred in connection with the Purchase Agreement and the Transactions (as defined in the Purchase Agreement) (the "Expense Reimbursement") as follows.  The Expense Reimbursement shall become payable to Buyer upon the occurrence of the following:  (a) entry of a final order approving the sale of the Purchased Assets to another bidder; (b) close of a sale to another bidder; and (c) approval by the Bankruptcy Court.  As to this last event, Buyer shall file with the Court and serve by email upon counsel for any Creditors' Committee and the Office of the United States Trustee (with a copy to Debtor's counsel), a declaration setting forth the expenses incurred and the amount of the asserted Expense Reimbursement.  Counsel for the Creditor's Committee and the Office of the United States Trustee shall have five (5) business days to review the same, and within which to file and serve by email its objection. The absence of a timely objection shall constitute approval by the Creditors' Committee (if any) and the Office of the United States Trustee of payment of the requested Expense Reimbursement, and the Buyer then may request approval of the Expense Reimbursement by the

Bankruptcy Court. In the event an objection is timely made and cannot be resolved, the matter shall be set for hearing.

9. No Expense Reimbursement shall be payable to Buyer if it breaches its obligations under the Purchase Agreement without having its performance excused under the terms of the Purchase Agreement.

10. The Expense Reimbursement will constitute allowed administrative expense of the Debtor's bankruptcy estate pursuant to section 503(b)(1)(A) of the Bankruptcy Code and entitled to the priority set forth in section 507(a)(2) of the Bankruptcy Code.

11. No other bidder shall be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment.

**Notice of Bid Procedures and Sale Motion**

12. On or before April 6, 2010, the Debtor shall cause notice of the hearing on the Sale (including the Bidding Procedures approved by the Court) (the "Sale Notice") to be served by first-class mail on those persons listed on the Global Service List, as well as persons who have filed requests for Special Notice (collectively, the "Sale Mailing List"). Among other things, the Sale Notice shall include the amount of the Assumed Liabilities (as defined in the Purchase Agreement) as set forth on the applicable schedule to the Purchase Agreement agreed to by the Debtor and Buyer.

**Notice of Assumption Motion**

13. To further facilitate the Sale, on or before April 6, 2010 the Debtor shall serve on the Sale Mailing List, via first class mail, the Assumption Notice, with an attached schedule setting forth the cure amounts as determined by the Debtor (the "Cure Amounts") on the Sale Mailing List. If no Cure Amount is listed, the Debtor shall state in the notice that it believes that there is no Cure Amount owing to the party to such executory contract or unexpired lease.

**Moving Papers (Bid Procedures, Sale Motion and Assumption Motion)**

14. On or before April 13, 2010, the Debtor shall cause service of the pleadings in support of the Sale Motion (which shall include as exhibits, the Purchase Agreement (without attachments) and the Bidding Procedures approved by the Court), the Assumption Motion, and all

declarations in support thereof, by first class mail upon (a) the UST; (b) counsel for the Buyer; (c) the Committee and its counsel (if any); (d) all entities (or counsel therefor) known to have asserted any lien, claim, encumbrance, right of refusal, or other property interest in or upon the Debtor or the Purchased Assets; (e) Interested Bidders; (f) the Internal Revenue Service; (g) all entities who have filed a notice of appearance and request for service of papers in these cases; and (h) all non-debtor parties to the Assumed Contracts.

**Objection Bar Dates**

15. Objections, if any, to the Sale, must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Northern District of California, San Jose Division, 280 South First Street, Room 3020, San Jose, California 95113, on or before **April 27, 2010**, and (d) be served no later than **April 27, 2010** upon (1) Debtor's counsel, Doris A. Kaelin of Murray & Murray, A Professional Corporation, 19400 Stevens Creek Boulevard, Suite 200, Cupertino, California 95014, facsimile (650) 852-9244, email: dkaelin@murraylaw.com; (2) counsel for the Creditors' Committee (if any); (3) counsel for ARINC, Judith B. Kassel, Mary-Joanne Dowd, and Katie A. Lane of Arent Fox LLP, 1050 Connecticut Avenue, N.W., Washington, DC 20036, Fax: (202) 857-6395, email: dowd.mary@arentfox.com; kassel.judith@arentfox.com; lane.katie@arentfox.com; and (4) the Office of the United States Trustee, 280 South First Street, Room 268, San Jose, California 95113, facsimile (408) 535-5532 (the foregoing are collectively referred to as the "Service Parties")

16. The non-debtor parties to the Assumed Contracts shall have until **April 27, 2010** (the "Cure Bar Date") (a) to object to the assumption and assignment of any of the Assumed Contracts, (b) to object to the amount of the Cure Amounts, or (c) to assert that non-monetary defaults, conditions or pecuniary losses or other amounts must be cured or satisfied (including all compensation for any pecuniary loss resulting from a default in respect of the Assumed Contracts) under any of the Assumed Contracts in order for such Assumed Contracts to be assumed and assigned. Such party must file and serve an objection upon the Service Parties setting forth (i) the basis for the objection (non-monetary or otherwise), and, if applicable, (ii) the amount the party asserts as the cure amount and/or the amount of all compensation for any actual pecuniary loss

resulting from a default in respect of the Assumed Contracts (with appropriate documentation in support thereof). If no objection is received by the Cure Bar Date, the Cure Amounts attached to the Assumption Notice shall be controlling as to the amount necessary to be paid to cure under § 365(b)(1)(A) and (B) notwithstanding anything to the contrary in any Assumed Contract or other document, and the non-debtor party to the Assumed Contract shall be forever barred from asserting any claims for the Cure Amount against the Debtor, the Buyer or such other purchaser of the Purchased Assets through the effective date of the assumption and assignment in respect of such Assumed Contract, and each party to any Assumed Contracts shall be deemed to have consented to the assumption and assignment of the Assumed Contract to ARINC or any other purchaser of the Purchased Assets.

17. Time is shortened such that the Cure Bar Date and the deadline for objections to the Sale Motion and the Assumption Motion shall be **April 27, 2010**. In the event an objection is filed to the Sale Motion or the Assumption Motion, any reply shall be due by **April 29, 2010**.

18. The failure of any person to file its objection timely and in accordance with the requirements of this Order shall bar the assertion at the Sale Hearing or thereafter of any objection to either the Sale Motion or the Assumption Motion and the Debtor's consummation and performance of the Purchase Agreement, including the sale and transfer of any of the Debtor's assets free and clear of any and all liens, claims and encumbrances (other than permitted encumbrances provided for expressly in the Purchase Agreement or alternative purchase agreement entered into with the successful bidder). Notwithstanding anything herein to the contrary, if any non-debtor party to an Assumed Contract (a "Contract Counterparty") is not satisfied with the showing of adequate assurance of future performance by any Qualified Bidder by the Sale Hearing, then the Contract Counterparty shall have the right to raise that objection to the Assumption Motion prior to the Auction at the time of the Sale Hearing.

### Additional Provisions

19. On or before **4:00 P.M. (Pacific Daylight Time) on April 30, 2010**, Buyer shall file a declaration setting forth the outstanding balance owing under the DIP Financing.

20. The Debtor is authorized to conduct the sale of the Purchased Assets without the necessity of complying with any state or local bulk transfer laws or requirements and any such compliance is waived.

21. This Order shall become effective immediately upon its entry.

22. The Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

<u>APPROVED AS TO CONTENT AND FORM</u>:

ARENT FOX LLP

By: */s/ Katie A. Lane*
    Katie A. Lane
    Attorneys for ARINC Engineering Services,
    Inc. and ARINC Acquisition, LLC

**\*\*END OF ORDER\*\***

**COURT SERVICE LIST**

**Debtor**
Impeva Labs, Inc.
Attn: Randall Shepard
2570 W. El Camino Real, Suite 100
Mountain View, CA 94040

**U.S. Trustee**
John Wesolowski
Office of the U.S. Trustee
U.S. Federal Bldg.
280 S. First Street, #268
San Jose, CA 95113

**Attorneys for Debtor**
Robert R. Franklin
Doris A. Kaelin
Murray & Murray
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548

**Attorneys for Agility Investments Holdings LLC**
David M. Unseth
Bryan Cave LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102

**Attorneys for ARINC Engineering Services, Inc. and ARINC Acquisition, LLC**
Katie A. Lane
Arent Fox LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339